RALPH L. SCHOOLEY, Doing Business as R. L. SCHOOLEY PIPE LINE EXCAVATING CONTRACTORS, Respondent, v. ÆTNA CASUALTY AND SURETY COMPANY, Appellant; WALLACE STEEL AND SUPPLY COMPANY, Respondent, et al., Defendants.

Fourth Department, January 5, 1961.

*Winchell, Macken, Goldwater & Connors* (*Richard H. Connors* of counsel), for appellant.

*Sidney J. Salzman* for Ralph L. Schooley, respondent.

*Brown, Zurett & Sullivan* (*William V. Gough* of counsel), for Wallace Steel & Supply Company, respondent.

*Per Curiam.* This is an appeal from a judgment declaring that certain exclusions in a public liability policy issued to the plaintiff had been waived by a certificate and rider issued by defendant insurance company.

On August 6, 1956, the Wallace Steel & Supply Co. of Ithaca, New York, entered into a written contract with the New York State Electric and Gas Corporation for the removal of certain gas holders in Geneva, Lyons and Newark and the purchase by Wallace of the scrap resulting from such removal. The contract further provided that the contractor would carry or cause to

be carried by the contractor or his subcontractors not only workmen's compensation insurance but also comprehensive public and automobile liability insurance with limits of $50,000 to $100,000 for bodily injury and at least $10,000 property damage for each accident. Before work was to be commenced Wallace agreed to file with the New York State Electric and Gas Corporation a certificate of insurance showing compliance with the afore-mentioned provisions of the contract and further agreed that any subcontractor was to furnish Wallace with a similar certificate.

Later and about August 10, 1956, the plaintiff Schooley entered into an oral contract with Wallace for the dismantling of the gas holders previously mentioned and to load them on trucks and to furnish a certificate of insurance to Wallace satisfactory to New York State Electric and Gas Corporation. Schooley, at the time had a comprehensive public liability policy in force with the Ætna Casualty and Surety Company which expired April 10, 1957 with limits of $50,000 to $100,000. He applied for an increase in policy limits and for a certificate. A rider by the carrier was issued August 10, 1956, increasing the limits of liability for bodily injury to $100,000 to $300,000 and for property damage to $25,000 to $50,000 for each accident, but made no other change. A certificate of insurance showing the increased limits was issued by Ætna to Wallace at Schooley's request. Work was commenced. While demolishing the gas holder at Geneva, damage was done to the roof, equipment and premises of Gordon Motor Parts, Inc., the owner of adjoining property. That company sued Schooley, who notified Ætna which disclaimed upon the ground that the damages, if any, were caused by an act or acts which were excluded from coverage under the terms of the issued policy.

The policy as originally issued contained an exclusion from coverage known as exclusions " J " and " K ". The exclusion under " K " we are not presently concerned with. Exclusion " J ", however, is the one the carrier claims applied here. The printed part of the exclusion provides as follows: " (j)   *   *   * (2) the collapse of or structural injury to any building or structure due (a) to excavation, including borrowing, filling or backfilling in connection therewith, or to tunneling, pile driving, coffer-dam work, or caisson work, or (b) to moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof ". A special rider to the policy was issued about the same time as the increase in policy limits rider, removing the exclusions under

" J " and " K " mentioned above and running to Schooley for work being done at Geneva, Lyons and Newark with reference to gas holders for the New York State Electric and Gas Corporation. It is this second rider which is largely responsible for the present dispute.

The record indicates that for such coverage a higher premium would be charged. Furthermore the record is silent as to how this second rider originated and whether or not it applied to the Wallace contract. The record is barren of any factual proof as to how the accident occurred, whether or not there was any collapse or structural injury to the premises of the Gordon Motor Parts, Inc., or whether it was a piercing of the roof and damage to the personal property stored therein, as distinguished from collapse or structural injury. Inasmuch as property damage only was involved, either the exclusion had been waived; or what was equally important, prescinding from the questions of the waiver of exclusion, did the factual situation of the Gordon Motor Parts, Inc., claim even come within the exclusion clause.

It is a fundamental rule of law that in the event there is an ambiguity in the language of a policy, it shall be construed most strongly in favor of the insured. " No liberality of construction, however, in favor of the insured permits the inclusion of a risk which has been expressly excluded by the terms of the contract." (*Marcus* v. *United States Cas. Co.*, 249 N. Y. 21, 25.) However, one of the questions which must be resolved is the extent of coverage under the policy and its indorsements.

The case of *D'Agostino Excavators* v. *Globe Ind. Co.* (7 A D 2d 483) is factually in point with the instant case. There a policy of liability insurance was issued with identically the same exclusion clause. There damage was done by a bulldozer backing into a building on property contiguous to the covered property. It was held that such damage did not come under the exclusion clause.

Because of the insufficiency of the proof the judgment must be reversed and a new trial had.

HALPERN, J., concurs in result. Present — WILLIAMS, P. J., GOLDMAN, HALPERN, McCLUSKY and HENRY, JJ.

Judgment unanimously reversed on the law and facts, without costs of this appeal to any party, and a new trial granted.